**ADANTE D. POINTER, ESQ., 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**LATEEF H. GRAY, ESQ., SBN 250055**
**MARLON L .MONROE, ESQ., SBN 251897**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: LGray@LawyersFTP.com
Email: MMonroe@LawyersFTP.com

Attorneys for ADROA ANDERSON

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADROA ANDERSON, an individual; <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ALAMEDA, a municipal corporation; BENJAMIN HOLMES, in his individual capacity as a law enforcement officer for the CITY OF ALAMEDA POLICE DEPARTMENT; and DOES 1-50, inclusive. <br><br> Defendant(s). | Case No.: <br><br> <u>COMPLAINT FOR DAMAGES</u> <br> (42 U.S.C. § 1983) <br><br><br> <u>JURY TRIAL DEMANDED</u> |

PLAINTIFF'S COMPLAINT FOR DAMAGES

1

**INTRODUCTION**

1.      On June 23, 2022, Adroa Anderson was driving his vehicle in Alameda, California. Mr. Anderson's girlfriend was sitting in the passenger seat. Mr. Anderson traveled on Park Street for approximately two (2) blocks when, as he turned into the Valero gas station located at 1725 Park Street, he noticed the lights and sirens of an Alameda Police vehicle.

2.      City of Alameda Police Officer Benjamin Holmes approached Mr. Anderson's vehicle and within seconds of engaging Mr. Anderson in conversation, asked Mr. Anderson if he had been drinking. Throughout the interaction, Officer Holmes repeatedly asked Mr. Anderson if he had been drinking and alleged that he smelled the odor of alcohol when he approached Mr. Anderson's car.

3.      Mr. Anderson does not drink alcohol and laughed when Officer Holmes told Mr. Anderson that he smelled alcohol. Officer Holmes tried to convince Mr. Anderson to submit to a field sobriety test, but Mr. Anderson asserted his right not to participate in the field sobriety test. Officer Holmes then called his supervising officer to the scene. Once the Watch Commander arrived at the scene, he too tried to convince Mr. Anderson to submit to a field sobriety test. Mr. Anderson continued to assert his right to refuse the test and was subsequently arrested for suspicion of driving under the influence.

4.      While Plaintiff was in the police vehicle, Officer Holmes continued to try to convince Mr. Anderson to submit to a breathalyzer test. Once they reached the police station, Mr. Anderson agreed and said he would take the breathalyzer test if Officer Holmes would let Mr. Anderson go after the test showed that he was not intoxicated. After hearing Mr. Anderson's offer, Officer Holmes refused to administer the test.

5.      Once inside the police station, Defendant Holmes determined to have Mr. Anderson's blood drawn instead of administering the requested breathylzer test, which provides

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

immediate results of a person's blood alcohol concentration level.  After Mr. Anderson's blood was drawn, Officer Holmes handcuffed Mr. Anderson to the wall with his hand extended out in a pain inducing "T-position" for what felt like an eternity.

6.    Mr. Anderson was later transported to the Santa Rita Jail in Dublin, California, where he remained incarcerated for nearly 10 hours.

7.    All criminal charges against Mr. Anderson were dismissed and Mr. Anderson's drivers license was reinstated by the DMV after his blood results confirmed what Mr. Anderson had told Officer Homles, that he had not been drinking and that the breathylyzer, had it been administered, would have proven that he had no alcohol in his system.

## JURISDICTION

8.    This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343, confers jurisdiction upon this Court.  The unlawful acts and practices alleged herein occurred in the City and County of Alameda, California, which is within the judicial district of this Court.

9.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims, which are related to federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district, and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

11.    Plaintiff ADROA ANDERSON ("Plaintiff") has been and is a California resident and a United States Citizen.

PLAINTIFF'S COMPLAINT FOR DAMAGES

3

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

12.    Defendant CITY OF ALAMEDA ("Defendant City") is and at all times herein mentioned a municipal entity duly organized and existing under the laws of the State of California. Defendant City manages and operates the CITY OF ALAMEDA POLICE DEPARTMENT ("Defendant Department").

13.    Defendant BENJAMIN HOLMES (hereinafter "Defendant Holmes") was, and at all times mentioned herein, a police officer for the City of Alameda and is sued in his individual capacity.

14.    Plaintiff is ignorant of the true names and/or capacities of Defendants sued herein as DOES 1-50, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries, and damages hereinafter set forth.  Each Defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, and violation of public policy.  Each Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon the agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.  Plaintiff will ask leave to amend this Complaint subject to further discovery.

15.    In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for the City of Alameda Police Department.

16.    In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

17.    Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

**ADMINISTRATIVE PREREQUISITES**

18.    Plaintiff is required to comply with an administrative tort claim requirement under California law.  Plaintiff has exhausted all administrative remedies pursuant to California Government Code Section 910.  Plaintiff filed and served a timely government tort claim with the City of Alameda on December 22, 2022.  The claim was rejected by operation of law.

**FACTUAL ALLEGATIONS**

19.    On the evening of June 23, 2022, Plaintiff was driving his Cadillac Escalade in Alameda, California.  Prior to being pulled over by Defendant Holmes, Plaintiff had just left a location where both he and his girlfriend had donated clothes to the less fortunate.

20.    As Plaintiff was driving along Clement Avenue, he noticed Defendant Holmes pull his patrol car behind his Escalade and begin to follow him for approximately a quarter mile.

21.    Plaintiff turned onto Park Street and continued westbound for approximately one (1) block through the intersection of Park Street and Eagle Avenue before turning right into a Valero gas station located at 1725 Park Street in Alameda, California.

22.    Plaintiff stopped his car at a gas pump with Defendant Holmes' police vehicle right behind.  However, Defendant Holmes had now activated his car's lights and siren.  Defendant Holmes approached the driver's side of Plaintiff's vehicle and claimed that Plaintiff did not come to a complete stop at a stop sign, an allegation Plaintiff refutes.  Defendant Holmes requested Plaintiff's license and registration, and Plaintiff complied.

23.    As Plaintiff complied with Defendant Holmes's request, Defendant Holmes asked on two (2) occasions if Plaintiff and his passenger had anything to drink, to which Plaintiff asserted his right to remain silent.  Once Defendant Holmes received Plaintiff's license and registration, he returned to his police vehicle.  Approximately four (4) minutes later, Defendant Holmes returned to

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

Plaintiff's vehicle to return Plaintiff's registration and immediately asked, "Is there any reason why you are not talking to me?"

24.     Next, seemingly out of thin air, Defendant Holmes changed his justification for pulling Plaintiff over.  Defendant Holmes changed his justification for pulling Plaintiff over from Plaintiff having not come to a complete stop to now claiming that Plaintiff had swerved while driving while Defendant Holmes was trailing him.

25.     Despite Defendant Holmes newly contrived story about Plaintiff swerving, Plaintiff steadfastly remained silent during Defendant Holmes repeated attempts to induce Plaintiff into a conversation about drinking alcohol.  Defendant Holmes went on to proclaim that he "could smell alcohol [coming from the vehicle]."  Plaintiff, who had not drank alcohol in years, laughed at the accusation and again asserted his 5th Amendment right to remain silent, to which Defendant Holmes replied sit tight and walked back to his police vehicle.

26.     Approximately six (6) minutes later, Defendant Holmes returned to Plaintiff's vehicle and immediately requested Plaintiff get out of his vehicle and submit to a field sobriety test. Plaintiff asserted his right not to submit to the field sobriety test.  This prompted Defendant Holmes to respond, "That it is not a choice."  At that point, Defendant Holmes informed Plaintiff that he was detained and not free to leave.

27.     Defendant Holmes initially claimed he pulled Plaintiff over because Plaintiff failed to come to a complete stop at a stop sign.  Then, Defendant Holmes' justification pivoted to accusations of Plaintiff swerving while driving.  Ultimately, Defendant Holmes transformed his justification for pulling Plaintiff over into the fabricated accusation of  "smelling alcohol" and claimed that Plaintiff was driving while intoxicated.  Plaintiff disputed the allegations and responded that the officer in fact could not "smell an alcoholic beverage."  Accusations contained in

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

Defendant Holmes' report referring to Plaintiff's eyes as "bloodshot red" are also contradicted by video evidence.

28.    Defendant Holmes then stated that he was conducting his investigation and would let Plaintiff go if, after submitting to the field sobriety test, Plaintiff proved not to be under the influence.  Plaintiff asserted his right not to participate in the field sobriety test and proclaimed that he did not believe Defendant Holmes had the requisite probable cause to ask Plaintiff to submit to a field sobriety test.  During this exchange, Defendant Holmes informed Plaintiff that if he did not comply with his request, he would go to jail.  After Plaintiff again asserted his right not to participate in the field sobriety test, Defendant Holmes called a supervising officer to assist.

29.    As they waited, Defendant Holmes continued to attempt to coax Plaintiff into submitting to the field sobriety test.  Plaintiff repeatedly declined to submit to the test.  This prompted Defendant Holmes to try harder, by continuing to pressure and shame Plaintiff into submitting to the test.  Despite Defendant Holmes's repeated efforts to convince him, Plaintiff continued to decline to submit to the test.  Plaintiff then requested Defendant Holmes give him a ticket for rolling through the stop sign and let him go.  Defendant Holmes refused to do so.

30.    Shortly thereafter, the watch commander arrived on the scene and engaged Plaintiff. The Watch Commander incorrectly informed Plaintiff that in California, anyone with a valid California driver's license agrees to submit to a field sobriety test.  Despite the continued harassment by the officers to get Plaintiff to submit to the unnecessary field sobriety test, Plaintiff again asserted his rights and declined to submit to the field sobriety test.

31.    The Watch Commander, Defendant Holmes, and a yet-to-be-identified Officer returned to Plaintiff's vehicle and asked him to get out of the car.  While Plaintiff was exiting his vehicle, the Watch Commander informed Plaintiff that he was being arrested for suspicion of driving under the influence.  Subsequently, an officer had Plaintiff's vehicle towed from the scene.

32.    Defendant Holmes handcuffed Plaintiff and transported him to the Alameda Police Department.  While enroute, Defendant Holmes made yet another attempt to get Plaintiff to submit to a breathalyzer test to determine if Plaintiff was intoxicated.  Plaintiff initially declined the test, but moments later, changed his mind and requested a breathalyzer.

33.    Once at the Police Department, Plaintiff asked Defendant Holmes if he would still take Plaintiff to jail once the test showed Plaintiff was in fact not intoxicated.  Defendant Holmes responded with words to the effect that Plaintiff, "would go to jail regardless of what the breathalyzer revealed because [Plaintiff] was going to be charged with obstruction."

34.    Next, Defendant Holmes took Plaintiff inside the City of Alameda Police Department and instructed him to sit down on a bench.  While Plaintiff was sitting on the bench, Officer Holmes took the handcuff off Plaintiff's right wrist and secured it to the wall.  Once Plaintiff was handcuffed with one arm free, the toxicologist came to draw Plaintiff's blood.  Plaintiff continued to profess that he was not intoxicated, to which the toxicologist responded, "You will be ok. You will go to jail for one night and be out in the morning."  Plaintiff continued to complain about the unjustness of his detention, arrest and Defendant Holmes refusal to permit him to give a breathylizer sample to prove his innocence. Nevertheless, the toxicologist proceeded to draw Plaintiff's blood.

35.    Once Plaintiff's blood was drawn, Defendant Holmes grabbed Plaintiff's right hand and placed a new set of handcuffs on Plaintiff's right wrist.  Defendant Holmes then took the other side of the new handcuffs and secured the handcuff to the wall above Plaintiff's head.  As a result, Plaintiff found himself sitting on the bench, with both of his wrists handcuffed and secured to the wall above his head in a "T" position.  Plaintiff immediately complained to everyone present that this position was inhumane and likened it to a medieval torture chamber.

PLAINTIFF'S COMPLAINT FOR DAMAGES

8

36.    After being handcuffed in the T position for what felt like an eternity, Defendant Holmes took Plaintiff out of this position and handcuffed Plaintiff's hands behind Plaintiff's back. When Defendant Holmes handcuffed Plaintiff's hands behind Plaintiff's back, Plaintiff complained of the handcuffs being too tight on his wrists.  Defendant Holmes responded to Plaintiff's complaints with words to the effect of, "The handcuffs are fine."  Plaintiff responded by saying, "That is fine. You can leave the handcuffs the way they are because they will leave scars, and I can take pictures of my injuries when this is over."  Defendant Holmes then immediately loosened Plaintiff's handcuffs.

37.    Next, Defendant Holmes escorted Plaintiff outside to be transported to Santa Rita Jail.  Once outside, Defendant Holmes asked another officer to transport Plaintiff to jail.  At this time, Plaintiff noticed Defendant Holmes's body-worn camera was off.  Plaintiff immediately called out Defendant Holmes for not having his camera on while transporting a prisoner.  Defendant Holmes thereafter turned on his camera.  Ultimately, another officer ended up transporting Plaintiff to jail.  Plaintiff wound up being confined at Santa Rita Jail for nearly 10 hours.

38.    In the aftermath of the detention and arrest, no criminal charges were ever filed against Plaintiff.  Indeed, Plaintiff's drivers license was reinstated after the results from his blood tests came back negative for any alcohol.  The blood test results only confirmed what Plaintiff knew and had stated to Defendant Homles throughout the course of the incident – that Defendant Holmes did not smell any alcohol on Plaintiff's breath, that Plaintiff had not been drinking and that a breathylizer test would prove it.  Nevertheless, Plaintiff was forced to endure the humiliating and infuriating experience of: being accused of a crime he did not commit; having his car impounded; paying significant towing and storage fees to get his SUV released; being handcuffed and having his arms placed in a painful position; being denied his right to take a breathylizer at the Police

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

Department; undergoing an invasive blood draw; and remaining in custody at the Alameda Police Department and Santa Rita Jail for over 11 hours.

## DAMAGES

39.    As a consequence of Defendants' violations of Plaintiff's federal civil rights under 42 U.S.C. § 1983 and the Fourth Amendment, Plaintiff was physically, mentally, emotionally, and financially injured and damaged as a proximate result of Defendants' wrongful conduct.

40.    Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law.  Plaintiff is therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) if he is the prevailing party in this action under 42 U.S.C. §§ 1983 and 1988. Plaintiff is also entitled to punitive damages under 42. U.S.C. §§ 1983 and 1988.

41.    The conduct of the Defendant Police Officers was unnecessary, uncalled for and oppressive.  Plaintiff is therefore entitled to an award of punitive damages against said Defendant Officers.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of the 1st Amendment of the U.S. Constitution-Questioning Police Action)**
(Plaintiff against Defendant Holmes and DOES 1-25)

42.    Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

43.    At all times relevant herein, Plaintiff had a right to free speech and to protest police action as afforded and provided by the First Amendment and protected against retaliation by the same and 42 U.S.C. § 1983.

44.    Upon information and belief, Defendants chose to unlawfully arrest Plaintiff in retaliation for Plaintiff's exercising of his right to protest police action, liberty, and free movement.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

45.    The conduct of Defendants was willful, wanton, malicious, and with reckless disregard for the rights and safety of Plaintiff.

46.    As a result of their misconduct, Defendants are liable for Plaintiff's physical, mental, and emotional injuries, either because they were integral participants in the unlawful arrest or failed to intervene to prevent these violations.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Fourth Amendment —Unlawful Seizure under 42 U.S.C. § 1983)
(Plaintiff against Defendant Holmes, and DOES 1-25)

47.    Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

48.    Defendants' above-described conduct violated Plaintiff's rights as provided for under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures because Defendants lacked the requisite probable cause to arrest Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (FALSE IMPRISONMENT/FALSE ARREST)
(Plaintiff against Defendants Holmes, City of Alameda and DOES 1-25)

49.    Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

50.    Defendant Holmes and DOES 1-50 detained Plaintiff without just cause and under false pretenses.  Defendants restrained, detained, and/or confined Plaintiff without his consent or a lawful basis for an unreasonable period of time.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

51.    As a result of Defendant Holmes and DOES 1-50 unlawful confinement, Plaintiff suffered embarrassment and emotional distress.

52.    Defendant CITY is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Negligence)**
(Plaintiff against Defendants Holmes, City of Alameda and DOES 1-25)

53. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

54. Defendant Holmes and DOES 1-50 negligently detained Plaintiff without just cause and under false pretenses.  Defendants restrained, detained, and/or confined Plaintiff without his consent or a lawful basis for an unreasonable period of time.

55. As a result of Defendant Holmes and DOES 1-50 unlawful confinement, Plaintiff suffered embarrassment and emotional distress.

56. Defendant CITY is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Bane Act – Cal. Civ. Code Section 52.1)**
(Plaintiff against Defendants Holmes, City of Alameda and DOES 1-25)

57. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

58. Plaintiffs bring this "Bane Act" claim individually for direct violation of their own rights.

59. By their conduct described herein, Defendants and Does 1-50, acting in concert/conspiracy, as described above, violated Plaintiffs' rights under California Civil Code §52.1, and the

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

following clearly-established rights under the United States Constitution and the California Constitution:

a. Plaintiffs' right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, § 13 of the California Constitution;

b. Plaintiffs' right to assemble and to free speech as secured by the First Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution;

60. Further, any volitional violation of rights done with reckless disregard for those rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act. All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiffs' rights; none was accidental or merely negligent.

61. Alternatively, Defendants violated Plaintiffs' rights by the following conduct constituting threat, intimidation, or coercion that was above and beyond any lawful seizure or use of force.

62. Defendant CITY OF ALAMEDA is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

63. As a direct and proximate result of Defendants violations of California Civil Code §52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against all Defendants and are entitled to relief as set forth above, including punitive damages against Defendants and Does 1-50, and including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

64. As a result of Defendant Holmes and DOES 1-50 unlawful confinement, Plaintiff suffered embarrassment and emotional distress.

65. Defendant CITY is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### JURY DEMAND

66. Plaintiff hereby demands a jury trial in this action.

### PRAYER

Wherefore, Plaintiff prays for relief as follows:

1.  For general damages in a sum proven at trial;

2.  For special damages, including but not limited to past, present, and/or future wage loss, income, and support, medical expenses, and other special damages in a sum to be determined according to proof;

3.  For punitive damages against Defendant Holmes and DOES 1-50 in a sum according to proof;

4.  For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and § 794(a), Cal. Civ. Code §52.1 and as otherwise may be allowed by state and federal law;

5.  Any and all permissible statutory damages;

6.  For the cost of suit herein incurred; and

7.  For such other and further relief as the Court deems and proper.

Dated:  March 25, 2024

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE

/s/ Patrick Buelna
PATRICK BUELNA
Attorney for PLAINTIFF